**Ernest FRANKENFIELD, Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Appellee.**

No. 88–3327.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1988.

Decided Nov. 17, 1988.

Karl E. Osterhout (argued), Robert N. Peirce, Jr. & Associates, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Amy Reynolds Hay, Asst. U.S. Atty., W.D.Pa., Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Div., James A. Winn (argued), Asst. Regional Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, SEITZ, Circuit Judge and POLLAK, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Ernest Frankenfield appeals from a summary judgment in favor of the Secretary of Health and Human Services in Frankenfield's action, pursuant to 42 U.S.C. § 405(g) (1982 & Supp. IV 1986), for review of an administrative decision denying his request for disability benefits commencing as of July of 1985. Frankenfield contends that the case should be remanded to the agency for further proceedings because the administrative law judge did not give proper weight to the reports of his treating physician and refused to consider evidence of his psychiatric impairment. We will reverse the summary judgment in favor of the Secretary and remand for the entry of an order directing a remand to the Secretary for further consideration of Frankfield's medical and psychiatric impairments between March 1985 and September 1987.

Frankenfield is a fifty-one-year old former pipefitter, with a ninth grade education. After twenty-six years working as a pipefitter, on March 25, 1985, he was admitted to a hospital suffering from an acute myocardial infarction. In April 1985, a treadmill test was terminated after five minutes because of myocardial ischemia and shortness of breath. In May of 1985, a cardiac catheterization was performed, and showed a fifty percent occlusion of the left anterior descending artery, seventy percent occlusion of the circumflex artery and a fifty percent occlusion of the proximal right coronary artery. Frankenfield suffered angina attacks in July and August of 1985. In September of 1985, he was hospitalized following another coronary incident. A second catheterization was performed, which showed significant progression of Frankenfield's coronary disease since May of 1985. The left anterior descending artery was eighty to ninety percent occluded,

[*] Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania    sitting by designation.

the left circumflex artery was seventy percent occluded, and the right coronary artery was totally occluded. Quadruple coronary bypass surgery was performed on September 19, 1985. Frankenfield was released from the hospital, but readmitted on October 4, 1985, following a syncopal episode. At that time an EKG test was unremarkable, but a stress test performed on October 23, 1985, showed residual ischemic changes in the inferior wall of the left ventricle.

Frankenfield never worked after the March 25, 1985 myocardial infarction. He continued to report to his physicians episodes of pain in his left arm and chest, shortness of breath, and easy fatigability. In March 1986, a treadmill test was discontinued after five minutes because of shortness of breath, left leg pain, and fatigue.

Frankenfield applied for disability benefits on July 2, 1985. His claim was denied and he requested a hearing, which was held on November 3, 1986. The administrative law judge ruled that Frankenfield was not disabled, and the Appeals Council denied Frankenfield's request for review. The administrative record contains reports from Dr. Alan D. Bramowitz, Frankenfield's cardiologist, Dr. Nirmala Somani, his internist, and Dr. Guillermo Borrero, a psychiatrist who treated him for major depression. Dr. Bramowitz reported that Frankenfield suffered in August 1986 from very limited exercise tolerance, which rendered him incapable of returning to work. Dr. Somani reported as of October 22, 1986, that Frankenfield's functional capacity was limited by shortness of breath caused by minimal exertion. She recommended that he completely avoid physical exertion and concluded that he was disabled from pursuing any occupation. Both Dr. Bramowitz and Dr. Somani find a psychological disorder as well as exertional impairments. Dr. Somani's report disclosed that Frankenfield was taking 150 mg of Sinequan for sleep and depression. Dr. Borrero's reports of May 20, 1987 and June 4, 1987 disclose a diagnosis of depression which causes inability to function adequately, and Dr. Borrero states that because of his current level of functioning, he should not return to work.

The administrative law judge ruled that Frankenfield has residual functional capacity to perform the physical exertion requirements of work except for strenuous exertion above the light level and that there are no nonexertional limitations. Conceding that Frankenfield could not perform his past relevant work as a pipefitter, the administrative law judge concluded that since he could perform the full range of light work, he was not disabled. Critical to this conclusion were these findings:

> [T]he claimant's contentions with respect to totally disabling pain, shortness of breath, and other physical limitations do not appear credible and are inconsistent with the detailed clinical findings, the results of diagnostic thallium stress tests subsequent to bypass surgery, his use of medication, his regular range of daily activities, and his appearance and demeanor at the hearing.

> \*   \*   \*   \*   \*   \*

There are no nonexertional limitations.

Although test results indicated a heart functioning near normally following heart surgery, Frankenfield's treating physicians clearly credited his constant complaints of shortness of breath, chest pains, pain in the leg, fatigue and dizziness. They concluded that these symptoms rendered Frankenfield disabled.

The Secretary urges that there is an anomalous inconsistency between Dr. Bramowitz's pre- and post-surgery reports. The pre-surgery report states that Frankenfield would be unable to resume his usual work as a pipefitter because of symptomatic angina. The post-surgery report states that Frankenfield has "very limited exercise tolerance after coronary surgery" and that his "exercise tolerance suggests that he would not be capable of returning to work." These conclusions are consistent with post-surgical stress tests and symptoms and do not contradict Dr. Bramowitz's pre-surgery report.

Moreover, Dr. Borrero reports that Frankenfield suffers from a significant nonexertional limitation, a major depressive disorder causing Frankenfield to be dysfunctional. This psychiatrist recommended that Frankenfield not return to work.

Here three treating physicians, crediting Frankenfield's subjective complaints, which are consistent with the tests they conducted, determined that he is disabled. The Secretary cannot reject those medical determinations simply by having the administrative law judge make a different medical judgment. Rather, the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence. *E.g., Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). The administrative law judge refers to no such evidence. It is undisputed that Frankenfield cannot return to his former job. The administrative law judge points to no evidence tending to support his conclusion that Frankenfield could perform alternative substantial gainful employment existing in the national economy. The administrative law judge referred to clinical tests that are claimed to support that conclusion, but he did not address the symptoms that the treating physicians credited, or suggest why his evaluation of the clinical tests was superior to theirs. Moreover, the medical evidence in the reports of Dr. Bramowitz and Dr. Somani of a nonexertional psychological impairment was completely ignored. What we are left with is a rejection of medically credited symptomatology based solely on the administrative law judge's observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church. That is not permissible. *Benton for Benton v. Bowen,* 820 F.2d 85, 88 (3d Cir.1987); *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983).

At the Appeals Council level, Frankenfield submitted and the Appeals Council received in evidence Dr. Borrero's March 1987 report. The Appeals Council ruled that the report was insufficient to establish a nonexertional impairment prior to February 27, 1987, the last date on which Frankenfield's current application was effective. This conclusion ignores the contents of the reports of Dr. Bramowitz and Dr. Somani,

which disclose, long prior to February 27, 1987, an ongoing condition of depression. Dr. Borrero credited Frankenfield's disclosure to him of depression and incapacity to function following open heart surgery. His report clearly covers a period prior to the hearing. Thus, the Appeals Council should have considered the new evidence in Dr. Borrero's report.[1] *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831 (3d Cir.1984).

At oral argument on this appeal, Frankenfield's counsel conceded that at best he was entitled to a remand for further consideration by the Secretary, because it might still be possible for the Secretary to prove that he could during the relevant time period, between March of 1985 and September of 1987, perform sedentary work. The finding that he could in that period perform the full range of light work is not supported by substantial evidence in the record as a whole.

The summary judgment in favor of the Secretary will be reversed and the case remanded for the entry of an order directing the Secretary to reconsider Frankenfield's exertional and nonexertional impairments between March 1985 and September 1987.

---

**1.** In a new application, which included Dr. Borrero's new evidence, Frankenfield was found disabled as of September 1987. Thus, if it had been considered for the prior period, the outcome might well have been different.